IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

CLARENCE JONATHON WOOD and HEIDI COLLINGWOOD,

    Plaintiffs,

v.

SCOTTSDALE INDEMNITY COMPANY, and DOES 1 to 100, inclusive,

    Defendants.

No. CV 08-03335 NJV

**ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

## I. INTRODUCTION

This is a dispute as to whether an umbrella policy of insurance ("Policy") issued by Scottsdale Indemnity Company ("Defendant" or "Scottsdale") provides coverage for an incident in which Plaintiffs' daughter, Kayla Wood, drowned while riding an inflatable truck inner tube on the Trinity River. Plaintiffs sued Defendant in Humboldt County Superior Court for breach of contract and breach of the implied covenant of good faith and fair dealing. Defendant removed the case from Humboldt County Superior Court pursuant to 28 U.S.C. § 1441(b), and the parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

This matter is before the Court on Defendant's and Plaintiffs' second motions for summary judgment. (Docket Nos. 123-125; 127-132; 136-139.) Pursuant to Civil Local Rule 7-1(b), the parties' motions are taken under submission and the hearing scheduled for September 28, 2010 is vacated. The Court, having considered the parties' briefing on the present motions, and reconsidered

the parties' briefing and argument on their prior motions for summary judgment and Plaintiffs' motion for reconsideration, finds for the following reasons that Defendant is entitled to summary judgment as a matter of law. To the extent that they are not contradicted herein, the Court's order on the parties' previous motions for summary judgment (Doc. No. 98, filed on February 9, 2010) and the Court's order on Plaintiffs' motion for reconsideration (Doc. No. 122, filed on June 1, 2010) are incorporated into this order by reference.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiffs Clarence Jonathon Wood and Heidi Collingwood are the parents of Kayla Wood ("Kayla"), who drowned while riding an inflatable truck inner tube on the Trinity River on May 25, 2002. At the time that she drowned, Kayla was twelve years old and in the care of Kimberly Holz Lindstrom ("Holz Lindstrom"), who was the girlfriend of Clarence Jonathon Wood and the only adult on the inner tubing trip. Holz Lindstrom's father, Ralph Lindstrom, provided the inner tubes and a rope used to tie them together, and he drove Holz Lindstrom, Kayla and three other minors to the Trinity River.

As the result of Kayla's death, Plaintiffs sued Holz Lindstrom, Ralph Lindstrom and his wife, Pamela Lindstrom, in Humboldt County Superior Court. Summary judgment was granted in favor of the Lindstroms, and the state court case proceeded against only Holz Lindstrom. The Lindstroms' primary homeowner's insurance carriers provided a defense for Holz Lindstrom. Scottsdale, which provided umbrella coverage on the Lindstroms' homeowner's insurance, repeatedly denied coverage to Holz Lindstrom and declined to participate in any part of the state court litigation. Ultimately, Holz Lindstrom entered into a settlement agreement with Plaintiffs whereby (1) the Lindstroms' primary carriers agreed to pay their combined policy limits of $800,000 to Plaintiffs on behalf of Holz Lindstrom; (2) Plaintiffs agreed not to execute upon any judgment against Holz Lindstrom in excess of $800,000; and (3) Holz Lindstrom assigned to Plaintiffs any claims that she might have against Scottsdale. On August 30, 2006, Plaintiffs obtained an uncontested judgment against Holz Lindstrom in the amount of $5 million plus recoverable costs.

1       On May 23, 2008, Plaintiffs sued Scottsdale for breach of contract and breach of the implied
2  covenant of good faith and fair dealing (also referred to herein as "bad faith").  Plaintiffs assert their
3  breach of contract claim as judgment creditors of putative insured Holz Lindstrom pursuant to CAL.
4  INS. CODE § 11580(b)(2) (2005).  Plaintiffs assert their bad faith claim as assignees of Holz
5  Lindstrom.  Plaintiffs seek as damages either the Policy's $1,000,000 limit (for breach of contract),
6  or the $4.2 million that remains of the judgment entered against Holz Lindstrom (for breach of the
7  implied covenant of good faith and fair dealing), plus recoverable interest, fees and costs.

### B.    Procedural Background

Both Plaintiffs and Defendant have previously moved for summary judgment.  (Docket Nos. 55-60, 62, 64-67, 70-72, 76, 78, 84-85, 89 and 91.)  On February 9, 2010, the Court denied Plaintiffs' joint motion for summary judgment, and granted in part and denied in part Defendant's motion for summary judgment.  (Docket No. 98.)  Defendant's motion for summary judgment was granted as to the applicability of the Policy's one-year limitation period to Plaintiffs' bad faith claim, which the Court ruled was time-barred.  *Id.*  The Court then permitted Plaintiffs to file a motion for reconsideration pursuant to Civil Local Rule 7-9 (Docket Nos. 100, 102, 105-106; 108-111), which was granted in part and denied in part.  (Docket No. 122.)  Plaintiffs' motion for reconsideration was granted as to the applicability of CAL. CODE REGS. tit. § 2695.4(a) to the Policy's one-year limitation period, causing the Court to reinstate Plaintiffs' bad faith claim.  *Id.*  In reviving Plaintiffs' bad faith claim, the Court held only that Scottsdale was required to abide by the notice requirements of § 2695.4(a).  Scottsdale admittedly did not provide the notice required by § 2695.4(a).  However, because neither party had sufficiently addressed whether Scottsdale's alleged failure to satisfy those notice requirements should estop it from asserting the one-year limitation period as a defense to Plaintiffs' bad faith claim, the Court did not determine whether that defense remains viable.  Finally, in addressing both parties' motions for summary judgment the Court declined to determine whether Holz Lindstrom was an insured under the Policy because the Court believed that neither party had provided sufficient evidence to establish entitlement to summary judgment on that issue.

Defendant now moves for summary judgment on the grounds that, even if the inner tube that Kayla was riding on at the time of her death was a "watercraft" as that term is defined in the Policy,

3

1  Plaintiffs cannot satisfy the remaining requirements to establish coverage for Holz Lindstrom such
2  that their claims fail as a matter of law.  Plaintiffs' second motion for summary judgment asserts that
3  Scottsdale's failure to satisfy the notice requirement of § 2695.4(a) with regard to the Policy's one-
4  year limitation period constitutes a waiver of Scottsdale's right to assert the limitation period as a
5  defense to Plaintiffs' bad faith claim.  Both Plaintiffs and Defendant have submitted requests for
6  judicial notice in conjunction with their second motions for summary judgment.  (Doc. Nos. 124,
7  128 and 132.)

### III.  APPLICABLE LEGAL STANDARDS

#### A.  Judicial Notice

Courts may take judicial notice of facts that are "either (1) generally known within the territorial jurisdiction of the trial court or (2) are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  Both Plaintiffs and Defendant ask the Court to take judicial notice of their July 21, 2009 Joint Statement of Undisputed Facts (Doc. No. 64) and their July 21, 2009 Joint Stipulation Authenticating and Admitting Into Evidence Documents for Motions for Summary Judgment (Doc. No. 74)  ("Joint Stip.").  Because these documents are stipulations of the parties, have been filed in this Court, and are a matter of public record, the Court grants the parties requests as to these documents and takes judicial notice thereof.  *Indonesian Imports, Inc. v. B. H. Smith*, 1999 WL 183629, *5 n.7 (N.D.Cal., 1999) (citing Federal Rule of Evidence 201; *Intermedics, Inc. v. Ventritex, Inc.*, 775 F. Supp. 1258, 1261 (N.D.Cal. 1991); *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); and William W. Schwarzer, et al., Federal Civil Procedure Before Trial, §§ 12:54-12:55 (1998)).  Plaintiffs also ask the Court to take judicial notice of dictionary definitions of the words "entrust" and "operate."  This request is denied for the same reasons stated in the Court's ruling on the parties' original motions for summary judgment.  (Docket No. 98.)  However, the Court has considered those authorities and definitions in due course, as they are cited in Plaintiffs' briefing.

#### B.  Summary Judgment

Summary judgment is appropriate where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a

4

1  matter of law." Fed. R. Civ. P. 56(c). When faced with a motion for summary judgment, a court
2  must determine, viewing the evidence in the light most favorable to the non-moving party, whether
3  there is any genuine issue of material fact. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865,
4  872 (9th Cir. 2007). A material fact is one that "might affect the outcome of the suit under the
5  governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute
6  exists as to a material fact "if the evidence is such that a reasonable jury could return a verdict for
7  the nonmoving party." *Id.*

8  The party seeking summary judgment bears the initial burden of identifying those portions of
9  the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material
10 fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz
11 Cos.*, 210 F.3d 1099, 1102 (9th Cir.2000). If the moving party meets its initial burden, responsibility
12 shifts to the opposing party to show that a genuine issue of material fact actually does exist.
13 *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to
14 establish the existence of a factual dispute, the opposing party must go beyond the denials of its
15 pleadings and tender evidence of specific facts in the form of affidavits or admissible discovery. *Id.*
16 at 586 n.11. However, "the issue of material fact required … is not required to be resolved
17 conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient
18 evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the
19 parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49 (internal quotations
20 and citations omitted). If the nonmoving party fails to produce enough evidence to show a genuine
21 issue of material fact, summary judgment will be granted. *Celotex*, 477 U.S. at 323-24.

22 **C.    Interpretation of Insurance Contracts**

23 Interpretation of an insurance contract is generally a question of law. *Waller v. Truck Ins.
24 Exch.*, 11 Cal. 4th 1, 18, 44 Cal. Rptr. 2d 370, 900 P.2d 619 (Cal. 1995). In a diversity action
25 involving the interpretation of an insurance contract California insurance law controls. *See
26 Conestoga Servs. v. Executive Risk Indem.*, 312 F.3d 976, 980-81 (9th Cir. 2002). When applying
27 California law, a federal court must apply the law as it believes the California Supreme Court would
28 apply it. *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

5

1   When the California Supreme Court has not decided an issue, a federal court must use "intermediate
2   appellate court decisions, statutes and decisions from other jurisdictions" to predict how the
3   California Supreme Court would decide the issue. *Id.*

4   "Insurance policies are contracts and therefore subject to the rules of construction governing
5   contracts." *Safeco Ins. Co. of America v. Robert S.*, 26 Cal. 4th 758, 762, 110 Cal. Rptr. 2d 844, 28
6   P.3d 889 (Cal. 2001). The fundamental goal of contractual interpretation is to give effect to the
7   mutual intentions of the parties at the time of contracting. CAL. CIV. CODE § 1636; *Bay Cities
8   Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 867, 21 Cal.Rptr.2d 691, 855
9   P.2d 1263 (Cal. 1993). "Such intent is to be inferred, if possible, solely from the written provisions
10  of the contract." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822, 274 Cal. Rptr. 820, 799 P.2d
11  1253 (Cal. Ct. App. 1990) (citing CAL. CIV. CODE § 1639). "The clear and explicit meaning of
12  words of a contract, interpreted in their ordinary and popular sense, unless used by the parties in a
13  technical sense or a special meaning is given to them by usage, controls judicial interpretation." *Bay
14  Cities*, 5 Cal. 4th at 867; CAL. CIV. CODE §§ 1638, 1644; *see also Stanford Ranch Inc. v. Maryland
15  Cas. Co.*, 89 F.3d 618, 626 (9th Cir. 1996) (words of the policy are to be interpreted according to the
16  plain meaning which a layperson would ordinarily attach to them). "If contractual language is clear
17  and explicit, it governs." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264, 10 Cal. Rptr. 2d
18  538, 833 P.2d 545 (1992).

19  "The initial question of whether an ambiguity exists is a question of law." *Benach v. County
20  of Los Angeles*, 149 Cal. App. 4th 836, 847, 57 Cal. Rptr. 3d 363 (Cal. Ct. App. 2007); *Airborne
21  Freight Corp. v. McPherson*, 427 F.2d 1283, 1285 (9th Cir. 1970). A policy provision is ambiguous
22  when it is susceptible to two or more reasonable constructions. *See Waller,* 11 Cal. 4th at 18.
23  Language in an insurance policy "cannot be found to be ambiguous in the abstract." *Id.* (internal
24  citation omitted). **"The proper question is whether the word is ambiguous in the context of this
25  policy and the circumstances of this case. The provision will shift between clarity and
26  ambiguity with changes in the event at hand."** *Bay Cities*, 5 Cal. 4th at 868 (emphasis added); *see
27  also California State Auto. Assn. Inter-Ins. Bureau v. Superior Court,* 177 Cal. App. 3d 855, 859,
28  n.1, 223 Cal. Rptr. 246 (Cal. Ct. App. 1986) ("There cannot be an ambiguity per se, i.e. an ambiguity

unrelated to an application.").

When contractual language is ambiguous, "it must [first] be read in conformity with what the insurer believed the insured understood thereby at the time of formation, and if it remains problematic, [the ambiguity is resolved] in the sense that satisfies the insured's objectively reasonable expectations." *Buss v. Superior Court*, 16 Cal. 4th 35, 45, 65 Cal. Rptr. 2d 366, 939 P.2d 766 (Cal. 1997) (internal citations omitted); *Safeco*, 26 Cal.4th at 763; *see also Sprinkles v. Associated Indem. Corp.*, 2010 WL 3431680, *7 (Cal.Ct.App., 2010) (evaluation of an insured's objectively reasonable expectations may result in a restriction of coverage rather than an expansion) (internal citations omitted). Only if a court is unable to resolve the ambiguity by looking to the reasonable expectations of the insured at the time the contract was formed does the court then resolve it against the insurer. *Bank of the West*, 2 Cal. 4th at 1264-65.

When the parties' intent at the time of contracting cannot be inferred solely from the written provisions of the contract, a court will consider evidence outside the agreement. *Beneficial Fire & Cas. Ins. Co. v. Kurt Kitke Co.*, 46 Cal. 2d 517, 524, 297 P.2d 428 (Cal. 1956); CAL. CIV. CODE § 1860. California's parol evidence rule "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates ... or to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement ...." *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 435, 204 Cal. Rptr. 435, 682 P.2d 1100 (1984) (citing CAL. CIV. PROC. CODE § 1856(g)). "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pacific Gas & Electric Co. v. G.W. Thomas Drayage & Rigging Co., Inc.*, 69 Cal. 2d 33, 37, 69 Cal. Rptr. 561, 442 P.2d 641, (1967). Indeed, "[i]f the court determines a contract is ambiguous, a party is entitled to introduce extrinsic evidence to aid the interpretation of the contract." *Benach*, 149 Cal. App. 4th at 847. To that end, CAL. CIV. CODE § 1860 provides that, "[f]or the proper construction of an instrument, the circumstances under which it was made [...] may [...] be shown, so that the Judge be placed in the position of those whose language he is to interpret." CAL. CIV. CODE § 1860; *see also* CAL. CIV. CODE § 1647 (contract may be explained by reference to the circumstances under

7

which it was made and the matter to which it relates).

## IV. ANALYSIS

In reviewing the record and the parties' second motions for summary judgment, the Court has determined that it is appropriate to *sua sponte* reconsider its ruling on the parties' prior motions for summary judgment. *See United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004) (A court may reconsider its own prior order provided that it has not been divested of jurisdiction over it). Specifically, the Court has decided to revisit the threshold issue of whether the inflatable truck inner tube that Kayla was riding on at the time of her death is a "watercraft" as that term is used in the Policy. In doing so, the Court acknowledges that neither Plaintiffs nor Defendant has re-raised this issue in the motions for summary judgment that are presently before the Court. However, a court may *sua sponte* grant summary judgment even when a party has not requested it, provided that the losing party has had "'a full and fair opportunity to ventilate the issues involved in the matter.'" *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir. 1982)). The record shows that the parties have extensively briefed and argued all of the salient issues in this case in the context of their first motions for summary judgment, Plaintiffs' motion for reconsideration, and the parties' second motions for summary judgment. That is, both Plaintiffs and Defendant have had more than an adequate opportunity to address the salient issues involved, including adequate time and multiple opportunities to develop any facts necessary to oppose summary judgment. Therefore, the Court may properly reconsider its prior rulings in this case and *sua sponte* grant summary judgment on grounds not raised by the parties in the motions presently before the Court. *Id.*; *Fuller v. City of Oakland, California*, 47 F.3d 1522, 1533 (9th Cir. 1995) (internal citations omitted).

### B. Insurance Contract Interpretation

It is not disputed that the viability of Plaintiffs' claims is contingent upon the Policy providing coverage to Holz Lindstrom for liability arising from the incident that resulted in Kayla's death. It is also not disputed that Holz Lindstrom is not a named insured under the Policy. Rather, Plaintiffs claim that coverage is afforded to Holz Lindstrom under the following policy provisions:

VI.   PERSONS INSURED

|   |   |   |   |
|---|---|---|---|
| 1 | A. | Each of the following is an insured under Coverage A to the extent set forth below: | |
| 2 | | | |
| 3 | | 1. | With respect to automobiles or watercraft to which this policy applies: |
| 4 | | | [...] |
| 5 | | c. | Any of the following, while using the automobile or watercraft owned by or in the care of the named insured: |
| 6 | | | (i)  Any person using an automobile or watercraft with the permission of the named insured for the purpose intended by the named insured; |
| 7 | | | |
| 8 | | | (ii) Any person or organization legally responsible for the use of such automobile or watercraft, but only if no other insurance of any kind is available to that person or organization for such liability. |

Joint Stip., Ex. D.

Thus, as the parties agree, whether the Policy provides coverage for Holz Lindstrom for liability arising from the incident that resulted in Kayla's death is contingent upon whether the inflatable truck inner tube that Kayla was riding on at the time of her death is a "watercraft," and if so, whether Holz Lindstrom was "using" the inner tube, and/or both "legally responsible for the use of" the inner tube and had "no other insurance of any kind ... for such liability." *Id.*

The Policy defines the term "watercraft" as "any craft, boat, vessel, or ship designed to transport persons or property on water." *Id.* As evidenced by the parties' respective positions and extensive briefing, the plain language of the definition is neither sufficiently clear nor explicit as to whether the term "watercraft" includes an inflatable truck inner tube like the one that Kayla was riding on at the time of her death. Looking at this definition in the context of the Policy and the circumstances of this case, the Court previously determined that the term "watercraft" as used and defined in the Policy is susceptible to different yet reasonable interpretations and is therefore ambiguous as a matter of law.

In an attempt to resolve the ambiguity in the definition of "watercraft" the Court reads the language at issue **"in conformity with what the insurer believed the insured understood thereby at the time of formation, and if it remains problematic, in the sense that satisfies the insured's objectively reasonable expectations."** *Buss*, 16 Cal. 4th at 45 (emphasis added). The parties have

9

1   stipulated to the authenticity and admissibility of several documents and records that are relevant to
2   this inquiry, which the Court has reconsidered in resolving the ambiguity surrounding the term
3   watercraft. The first is a "Personal Umbrella Application" executed by Ralph Lindstrom on May 31,
4   2001[1] and attached as Exhibit A to the parties' Joint Stipulation Authenticating and Admitting Into
5   Evidence Documents for Motions for Summary Judgment. On the first page of the application, there
6   is a field entitled "Watercraft" where the applicant is to "list all watercraft owned, leased, chartered
7   or furnished for regular use." Ralph Lindstrom did not list any watercraft in that field. The first
8   page of the application also contains a section that itemizes the premiums to be charged for various
9   aspects of the umbrella coverage for which Mr. Lindstrom was applying. The field for a premium
10  pertaining to watercraft coverage was left blank, suggesting that there was no premium being
11  charged for risk arising from the use of watercraft, for which Scottsdale believed it was not
12  providing coverage. That notion is supported by Item 7(c) of the declarations page that was issued
13  with the Policy, which states "Excluded" under the subheading "Watercraft Liability."
14      In addition to the aforementioned documents related to the issuance of the Policy, the sworn
15  testimony of Ralph Lindstrom and his co-insured wife Pamela Lindstrom clearly shows that they did
16  not believe that they owned any watercraft either at the time that they applied for the Policy or
17  during the policy period, and therefore could not have reasonably expected that were obtaining
18  coverage for liability arising from the use of such watercraft. At his deposition, Ralph Lindstrom
19  confirmed that he did not identify any watercraft in the aforementioned personal umbrella
20  application. Ralph Lindstrom Dep. 14:9-15, April 16, 2009 (Joint Stip., Ex. B). He was then asked
21  by Defendant's counsel whether that meant that he did not own any watercraft at the time that he
22  applied for the Policy, to which he answered "[t]hat's right." *Id.* at 14:16-18.[2] Ralph Lindstrom was
23  than asked whether he owned any watercraft, as he understood that term, during the Policy's period

---

[1] Mr. Lindstrom signed the application stating that he had read it and declaring that it was true to the best of his knowledge and belief.

[2] Although Plaintiffs' counsel admittedly belatedly objected that the term watercraft had not been defined for the witness, considering the context of the preceding question the Court finds that the question sought testimony as to Mr. Lindstrom's understanding of whether he thought he owned any watercraft at the time he applied for the policy - an inquiry that is directly relevant to resolving the ambiguity at issue.

10

of coverage. *Id.* at 18:21-23  No objection was stated as to that question, to which Ralph Lindstrom responded "I didn't." *Id.*  At her April 16, 2009 deposition, Pamela Lindstrom was also asked by Defendant's counsel whether she owned any watercraft either at the time that the policy was applied for or during the policy period.  No objection was raised as to these questions.[3] Pamela Lindstrom Dep. 7:17-23; 8:13-18, April 16, 2009 (Joint Stip., Ex. C).  Pamela Lindstrom responded "[a]s I understood watercraft to be, no" and "[n]o," respectively.  *Id.*  Later, during that same deposition, Plaintiffs' counsel elicited the following testimony from Pamela Lindstrom:

> Q.  Was there a point in time when your family had an inflatable kayak that you kept up at the Willow Creek property?
>
> A.  We did.  We -- actually, I'm not sure that it was our -- ours, but it was on our property.
>
> Q.  And did you and members of your family use it on the river?
>
> A.  Yes.
>
> Q.  Would you consider that watercraft, as you understand the term?
>
> A.  As I understand the term or as I would assume, no.  I wouldn't assume that an inflatable kayak was a watercraft.

*Id.* at 8:25-9:12. That is, Pamela Lindstrom, a named insured under the Policy, did not consider an inflatable kayak, which more readily fits within the Policy's definition of a watercraft than an inflatable truck inner tube, to be the type of craft for which the Policy provided coverage.  This testimony shows that the Lindstroms simply did not believe that they were obtaining coverage under the Policy's watercraft provisions for an incident like the one that resulted in the death of Kayla Wood.

The sworn testimony elicited by counsel for both Plaintiffs and Defendant, coupled with the statements and information contained in the Lindstroms' personal umbrella application and the Policy's declarations page, make clear to the Court that at the time the Policy was formed neither Ralph nor Pamela Lindstrom believed that they owned any watercraft, or that they were obtaining

---

[3] Although Plaintiffs' counsel objected to the initial question of whether Ms. Lindstrom owned any watercraft during the policy period, once Defendant's counsel rephrased the question to state "as you understood watercraft to be," no further objection was interposed.

11

coverage for liability arising from the use of any watercraft. The same evidence makes clear to the Court that Scottsdale issued the Policy in accordance with and reliance upon the information provided by Ralph Lindstrom in the personal umbrella application, which indicated that the Lindstroms were not seeking, nor was Scottsdale providing, coverage for liability arising from the use of any watercraft. That is, the evidence shows that Scottsdale believed that the Lindstroms understanding, at the time that the insurance contract was formed, was that they neither owned any watercraft nor were seeking or obtaining coverage therefor.

In light of the foregoing, the Court finds that the Lindstroms did not have even a subjective, let alone an objectively reasonable, belief that the Policy shielded them for liability arising from the use of any watercraft, including inflatable truck inner tubes like the one that resulted in the death of Kayla Wood. As a result, the Court concludes that the Policy does not provide coverage for Holz Lindstrom for liability arising from the incident that resulted in the death of Kayla Wood. Because Plaintiffs assert their breach of contract claim as judgment creditors of Holz Lindstrom and pursuant to CAL. INS. CODE § 11580(b)(2), which requires a judgment against *an insured* in order for a third party judgment creditor to sue an insurer for satisfaction of that judgment, that claim is no longer viable. Similarly, an action for breach of the implied covenant of good faith and fair dealing is premised upon the existence of a contractual relationship between insured and insurer. *C & H Foods Co. v. Hartford Ins. Co.*, 163 Cal. App. 3d 1055, 1068, 211 Cal. Rptr. 765 (Cal. Ct. App. 1984). Because Holz Lindstrom is neither named as an insured in the Policy nor qualifies as an additional insured under the Policy's watercraft provisions, she (and therefore Plaintiffs as her assignees) has no rights as an insured and may not assert a bad faith claim against Scottsdale. *Id. See also See Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 941-42, 132 Cal. Rptr. 424, 553 P.2d 584 (Cal. 1976) (duty to settle is for the benefit of the insured and cannot be enforced by a third party absent an assignment from the insured); *GDF International, S.A. v. Associated Electric & Gas Ins. Svcs. Ltd.*, 2003 WL 926790, \*5 (N.D.Cal. 2003) (because the duty to settle is intended to benefit the insured and not the injured claimant, the third party has no direct right to sue the insurer to recover) (citing *Murphy*, 17 Cal. 3d at 944; *Jane D. v. Ordinary Mut.*, 32 Cal. App. 4th 643, 650 (1995)). In sum, because Holz Lindstrom is not an insured under the Policy, Plaintiffs' claims fail and Scottsdale

is entitled to judgment as a matter of law.

### C. Parties' Second Motions for Summary Judgment

In light of the conclusion that Holz Lindstrom is not an insured under the Policy and therefore Plaintiffs' claims fail as a matter of law, the Court need not reach the issues raised in the parties' second motions for summary judgment. That is, because the inner tube at issue is not a "watercraft" under the Policy, the questions of whether Holz Lindstrom was (1) "using" or (2) "legally responsible" for (and without other insurance to cover liability arising from) the use of such inner tubes are moot. Similarly, the Court need not determine whether Scottsdale waived its right to assert the Policy's one-year limitation period as a defense to Plaintiffs' bad faith claim because that claim otherwise fails as a matter of law.

### V. CONCLUSION

In light of the foregoing, the Court FINDS that there are no genuine disputes of material fact as to whether the Policy provided coverage to Holz Lindstrom for liability arising from the use of inner tubes as flotation devices in the manner that resulted in Kayla Wood's death, and therefore GRANTS summary judgment in favor of defendant, Scottsdale Indemnity Company. As a result, Defendant's second motion for summary judgment (Doc. No. 123) and Plaintiffs' second motion for summary judgment (Doc. No. 131) are both DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: September 20, 2010

NANDOR J. VADAS
United States Magistrate Judge